**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
JONESBORO DIVISION**

**LENA GIBSON
AND JAMES GIBSON**                                                      **PLAINTIFFS**

**VS.**                             **NO.  3:08CV00205**

**AMERICAN GREETINGS CORPORATION**                          **DEFENDANT**

<u>**ORDER**</u>

Pending is Defendant's motion for summary judgment. (Docket # 14).  Plaintiffs have

filed a response and Defendant has filed a reply.  For the reasons set forth herein, the motion is

GRANTED.

<u>Facts</u>

On December 19, 2008, James Gibson and Lena Gibson, husband and wife, filed suit

against American Greetings Corporation ("AGC") alleging retaliation, race discrimination and

age discrimination pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e, 42

U.S.C. §1981, the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §621, et. seq.,

the Civil Rights Act of 1991 and the Arkansas Civil Rights Act of 1993, Ark. Code Ann. §16-

123-101, et. seq.  Lena Gibson alleges race discrimination based on efficiency ratings, work

assignments, the arbitrary seniority system, refusal to cross train, false allegations leading to false

warnings, and retaliation for participating in AGC's Solutions Mediation Program.  Lena Gibson

remains employed by AGC.  James Gibson also claims race discrimination based on efficiency

ratings and retaliation for participating in AGC's Solutions Mediation program and for filing an

EEOC charge of discrimination.  Mr. Gibson was discharged following a series of warnings

concerning failure to notify of being thirty (30) minutes late and a final warning for failure to

make production.

AGC headquartered in Cleveland, Ohio, is the world's largest publicly owned creator, manufacturer, and distributor of social expression products.  Through the company's facility in Osceola, Arkansas, AGC manufactures and distributes seasonal greeting cards and related products.  The Osceola facility also serves as a distribution center for retailers.  At all times relevant, AGC employed a diverse group of individuals; male, female, African-American, Caucasian, Hispanic, Asian and all ages.   In July 2006, 43 percent of the plant's employees were minority.  As of April 26, 2010, 47 percent of the plant's employees were minority.

James Gibson is African-American, he was age 52 at the time of his termination. Lena Gibson is African-American, she was age 53 at the time of the events giving rise to her claims of discrimination.  Frank Richardson is Caucasian and age 61.  At all times relevant, he was the Human Resources Manager at the AGC facility in Osceola, Arkansas.  Charles Singleton is Caucasian and age 66.  At all times relevant, he was a Department Manager at the AGC facility in Osceola, Arkansas.  Don Robertson is Caucasian and age 56.  At all times relevant, he was a supervisor at the AGC facility in Osceola, Arkansas.  James Smothers is Caucasian and age 53. At all times relevant, he was a supervisor at the AGC facility in Osceola, Arkansas.

AGC has in place a Solutions Mediation Program ("Solutions") that allows employees to bring disputes before a neutral mediator in an effort to resolve employee grievances amicably. Allegations of race and age discrimination represent two types of grievances that an employee may submit for mediation.

AGC employees are subject to a progressive discipline policy which is described in the Associate Handbook.  The handbook includes a nonexclusive list of violations including: failure

to maintain production standards, carelessness or inattention to safety rules, and violation of the

attendance policy.  Each violation may warrant disciplinary action in the form of a written

warning.  An employee may be discharged after receiving five written warnings.  Plaintiffs

complain that this policy is arbitrarily applied.   AGC states that if an employee works for a

period of one year without receiving further disciplinary action, prior violations are not counted

against that employee for purposes of the progressive discipline.  This one year period is based

on time worked, not on a calendar year; thus, time spent on qualified leave or vacation is not

credited towards this one year period.  Plaintiffs argue that this "time worked" policy is also

arbitrarily applied.

Lena Gibson

Lena Gibson has worked at AGC's Osceola facility since January 1975.  During her

tenure, she has worked in a number of departments and she has performed a number of job

duties. On August 11, 2005, Mrs. Gibson received a written warning for failing to follow proper

procedure in pulling stock from the warehouse.  Although Mrs. Gibson admits to receiving this

warning she denies its validity.  On September 2, 2005, Mrs. Gibson received an informative for

a safety violation.  Mrs. Gibson admits receiving this informative but denies its validity.  On July

12, 2006, Mrs. Gibson received a written warning for poor work performance because her error

rate was not within department guidelines.  AGC contends that this represented Mrs. Gibson's

second written warning for purposes of its progressive discipline policy.  Mrs. Gibson admits

receiving this written warning but denies its validity and denies that this was her second valid

warning.  On June 19, 2006, Mrs. Gibson received a written warning for poor work performance

because her error rate was not within department guidelines.  AGC contends that this represented

3

Mrs. Gibson's third written warning for purposes of the progressive discipline policy. Mrs. Gibson admits receiving this warning, but denies its validity and that it was her third valid warning.

Mrs. Gibson was on medical leave beginning in December 2006 and ending in January 2007. Therefore, AGC contends that her three prior written warnings did not expire under the progressive discipline policy until September 2007. According to AGC policy, an employee with two or more written warnings on file during a twelve month work period is not eligible for a promotion or transfer within AGC, even if the employee has more seniority than other employees competing for the same position. Mrs. Gibson admits that each of these policies exist, but claims that they are applied arbitrarily and the written warnings are often false.

On July 8, 2006, Mrs. Gibson submitted a claim to the AGC Solutions Mediation Program alleging that her supervisors, Charles Singleton and James Smothers, had discriminated against her because of her race. She also claimed that these individuals' actions toward her were in retaliation for her filing a charge of discrimination against the company several years earlier. In October 2006, the parties appeared before a neutral mediator and they reached an amicable resolution of Mrs. Gibson's grievances. There was no finding of discriminatory conduct by AGC. Mrs. Gibson requested, and was granted, a transfer from first shift to second shift with retention of her then current job classification as a Power Truck Operator at her then current rate of pay.

In March 2007, Mrs. Gibson received an overall rating of "achieves expectations" for the four month period that she was working in her new position. Charles Singleton approved this evaluation. In July 2007, Mrs. Gibson applied for an open position as a Power Truck Operator

4

for Holiday Order Filling.  AGC claims that Mrs. Gibson was not eligible for this position because she had three written warnings on her disciplinary record.  Plaintiff denies that she was not eligible for this position and claims that the alleged written warnings were pretext for denying her the position and AGC refused to cross train her for the position.  The position was awarded to Kelvin Street, an African-American male age 33.

In August 2007, AGC simultaneously posted two job openings which were available to eligible employees within the facility; a Back Up Line Dispatcher job in the Shipping Department and a Back Up Line Control Clerk job in the Receiving and Stores Department. Mrs. Gibson applied for both positions although she had three written warnings.  Mrs. Gibson denies the validity of these warnings.   Mrs. Gibson was offered and accepted the position as a Back Up Line Dispatcher in the Shipping Department. AGC claims that she received this position based on her seniority and interest but it was awarded in error given that three prior written warnings remained on her disciplinary record. Despite this error, Charles Singleton allowed Mrs. Gibson to retain the position which also had a higher rate of pay.  Because Mrs. Gibson accepted the Back Up Line Dispatcher position, the Back Up Line Control Clerk position was awarded to another employee, Vincent Hill (African-American, age 40).

On January 2, 2008, a first shift Power Truck Operator position became available on JITL ("Just in Time Line") 30, one of the card manufacturing lines at the facility. Mrs. Gibson applied for and received this particular job effective January 28, 2008.  Her pay and benefits remained the same. Charles Singleton approved this job change.

Mrs. Gibson has not received any type of disciplinary action for performance, quality, or attendance since October 2006.  Mrs. Gibson filed a second Solutions claim in December 2007,

5

alleging race discrimination, age discrimination, and retaliation.   Mrs. Gibson filed an EEOC charge of discrimination on December 12, 2007.  This charged was dismissed by the EEOC with notice of right to sue on September 22, 2008.

Mrs. Gibson identifies Brenda Ivy (Caucasian female born in 1958) as a comparator in support of her 2007 discrimination claim. However, Ivy was separated from AGC in 1987.  Mrs. Gibson identifies Billie Darty Britt (Caucasian female borne in 1969) as a comparator in support of her 2007 discrimination claim. However, Britt was separated from AGC in 2000.  Mrs. Gibson identifies Virginia Griffin (Caucasian female born in 1967) as a comparator in support of her 2007 claim of discrimination. However, Griffin was separated from AGC in 2001. Mrs. Gibson identifies Cindy Martin (Caucasian female born in 1963) as a comparator in support of her 2007 claim of discrimination. Martin was separated from AGC in February 2008. From 1999 to January 2006, Martin served in a Leader position. From January 2006 until her separation, Martin served as a JITL coordinator.  Although Martin and Mrs. Gibson never competed for the same job opening, Mrs. Gibson claims that with proper cross training, she would have competed with Martin for any job.  Mrs. Gibson identifies Tony Turner (Caucasian, born in 1980) as a comparator in support of her 2007 claim of discrimination. Turner was separated from AGC in March 2008. Starting in 2005, Turner worked as a Line Control Clerk, eventually accepting positions as a General Repairman in 2006 and as a Machine Specialist in 2007.  AGC contends that Turner and Mrs. Gibson never competed for the same job opening.  Mrs. Gibson argues that although a formal application was not filed, she "theoretically competed for every position." Mrs. Gibson identifies Clarissa Treadway (Caucasian female born in 1983) as a comparator in support of her 2007 claim of discrimination. Treadway presently works at AGC.  She became a

6

Power Truck Operator in January of 2006, and she remained in that position until her promotion to Stock Location Checker in May 2009.  AGC argues that Treadway and Gibson never competed for the same job opening.  Mrs. Gibson states that she competed for every position and if she had received proper cross training she would have been competitive.

James Gibson

James Gibson was hired by AGC on May 21, 1990. He initially worked as a Power Truck Operator in Returned Goods. From August 1990 through October 2005, Mr. Gibson received performance reviews that were "commendable," "exceeding expectations," or "distinguished," with the exception of an informative for safety issued on June 29, 1993, regarding the improper operation of a power truck, an informative for quality on March 27, 2002, and a written warning for conduct on August 26, 2002. Mr. Gibson denies the validity of the informatives dated June 29, 1993 and August 26, 2002.

On May 27, 1999, after receiving a good performance review, Gibson commented, "I enjoy working with the company and hope to do so in the future. I have a great supervisor. This is the best place I have ever worked . . . ." Charles Singleton was Mr. Gibson's supervisor at the time.   On June 21, 2001, Mr. Gibson received an exceptional performance review, however, his attendance was identified as an issue.  On May 9, 2002, after receiving another good performance review, Gibson wrote, "I will continue to do my best. I love my job, a great supervisor, and this review sounds good to me." Charles Singleton was Mr. Gibson's supervisor.   On August 26, 2002, Mr. Gibson received a written warning for conduct. Mr. Gibson denies the validity of this warning.  He received a favorable follow-up on October 8, 2002.

On October 6, 2005, James Gibson received an informative from Don Robertson after he

7

was observed by management operating a power truck in an unsafe and dangerous manner.

Specifically, Mr. Gibson was observed operating a power truck while holding a bag of potato

chips, a violation of company policy. Because Mr. Gibson had an informative in his file at the

time, Robertson issued him a written warning. Mr. Gibson admits that these events occurred but

denies the validity of this informative.  On February 21, 2006, James Gibson received a verbal

communication because he failed to adhere to the call-in policy which required at least 30

minutes notice before a scheduled shift to report an absence, a violation of company policy.   Mr.

Gibson admits that these events occurred but denies the validity of the warning claiming that he

provided a written doctor's excuse.  On June 29, 2006, Mr. Gibson received an informative for

failing to follow the 30 minute call-in policy.  Mr. Gibson denies the validity of this informative

claiming that he provided a written doctor's excuse.   None of the disciplinary action taken

against Mr. Gibson prior to November 21, 2006, factored in Mr. Gibson's 2008 discharge since

these particular disciplinary actions had rolled off Mr. Gibson's record in accordance with

AGC's progressive discipline policy.

On November 21, 2006 and December 15, 2006, Mr. Gibson received a written warning

for failing to follow the 30 minute call-in policy.   Mr. Gibson admits receiving the written

warnings but denies their validity.  AGC claims that on March 9, 2007, Mr. Gibson received an

informative for safety after he was observed operating his power truck in an unsafe manner. On

March 16, 2007, Frank Richardson provided written notice to Mr. Gibson reaffirming AGC's

expectation that all employees were expected to exercise safe driving practices when operating

AGC equipment. Mr. Gibson denies this safety informative claiming that it is not documented.

AGC claims that on September 19, 2007, Gibson was observed driving the power truck in

8

an unsafe manner. In this incident, Gibson caused a load of stock to fall off a train he was operating, nearly striking a member of management.  Mr. Gibson received a written warning for this violation after an investigation into the incident.  As a result, he was relieved of his power truck operator job and placed elsewhere within the facility.  He was replaced by Earnest Tunstall, a 63 year old African-American.   Mr. Gibson denies these factual allegations and states that these allegations were used as a pretext to relieve him of his power truck operator's job. On November 1, 2007, Gibson received a written warning after he failed to follow the 30 minute call-in policy.  Mr. Gibson denies the validity of this warning.

On December 7, 2007, Mr. Gibson submitted a dispute under the Solutions Dispute Resolution Program at AGC.  In his request, Mr. Gibson alleged that he was subjected to discrimination on the basis of his race and age, and that he had been retaliated against because his wife, Lena Gibson, had filed a Solutions claim.

AGC claims that Mr. Gibson was subject to a uniform time standard that required that he perform his job tasks to a specific level of efficiency. In January of 2008, all employees performing the same job tasks were required to meet or exceed a 90% efficiency rating, irrespective of race or age. Mr. Gibson denies that all employees were required to meet the 90% efficiency standard and denies that this time standard was uniform.

For the four week period beginning January 6, 2008 through January 27, 2008, AGC claims that Mr. Gibson failed to meet the 90% efficiency standard set for his job category.  As a result, he received a written warning from his supervisor, Don Robertson.  AGC argues that because this constituted Mr. Gibson's fifth written warning in a twelve month period, Mr. Robertson informed Mr. Gibson at the beginning of his night shift that his employment with

9

AGC would be terminated.  Mr. Gibson claims that he worked in a group which made it impossible to determine his standard because of the group performance and that this false accusation was used as a pretext for his discharge.  Mr. Gibson asked to speak with Frank Richardson regarding his termination.  Robertson telephoned Richardson at his home since he had gone for the day. During that call, Frank Richardson informed Robertson that the company was reviewing Mr. Gibson's efficiency rating and previous written warnings and that Robertson was to instruct Mr. Gibson to return to his normal job duties until further notice. AGC claims that Richardson was unsure whether or not the termination could take effect while a Solutions claim was pending.  As a result, Robertson told Mr. Gibson to return to work. AGC argues that had Gibson's termination been effective at this time, AGC policy would have required that Mr. Gibson surrender his identification badge and he would have been immediately escorted from the facility. Instead, Mr. Gibson worked the rest of his shift on February 6, 2008 as instructed by Robertson.  Mr. Gibson admits these facts with the exception that he understood that he was only to finish his shift on February 6, 2008.  Mr. Gibson denies that company policy would have required the immediate surrender of his identification badge and removal from the facility had his termination been effective at this time.

Mr. Gibson called AGC on February 7, 2008, saying that he would not be in for his scheduled shift because he was taking a paid vacation day.  Only employees who are actively employed by AGC have the right to use a paid vacation day.  Because Mr. Gibson understood that he continued in his  employment with AGC as of February 7, 2008, he knew that he was entitled to take a paid day off.  Mr. Gibson admits these facts but contends that he was entitled to this paid vacation day regardless of the status of his termination.

Mr. Gibson was scheduled to work February 8, February 11, and February 12, 2008. However, he did not report to work on any of these dates nor did he follow the thirty minute call-in policy to report his absences. Mr. Gibson received a letter from AGC informing him he was deemed to have abandoned his job in accordance with AGC policy. This letter was automatically generated and sent by AGC's Shared Services Center without prior authority from management at AGC's Osceola facility. In January and February 2008, AGC discharged thirty-eight employees for job abandonment. Of this number, sixteen were Caucasian. Mr. Gibson denies that he was scheduled to work February 8, 11 and 12, 2008 as he had been terminated by Don Robertson and could only be rehired by Frank Richardson.

On February 19, 2008, Human Resources Manager Frank Richardson informed Mr. Gibson that he was being terminated under AGC's progressive discipline policy because he had received his fifth and final warning. Mr. Gibson was subsequently replaced by Bobby Stewart an African American, born in 1952. Mr. Gibson contends that he had been discharged by Robertson on February 8, 2008 and Mr. Richardson was only confirming his termination on February 19, 2008. Mr. Gibson filed an EEOC charge of discrimination against AGC on December 12, 2007. This charge was dismissed with notice of right to sue on September 22, 2008.

AGC claims that summary judgment is proper as neither Plaintiffs can produce sufficient evidence to support a prima facie case of discrimination nor can they establish that AGC's legitimate, nondiscriminatory reasons for its actions represent pretext for discriminatory or retaliatory conduct. Plaintiffs argue that genuine issues of material fact exist which should preclude the entry of summary judgment.

<u>Standard for Summary Judgment</u>

11

Summary judgment is appropriate only when there is no genuine issue of material fact, so that the dispute may be decided solely on legal grounds. *Holloway v. Lockhart*, 813 F.2d 874 (8th Cir. 1987); Fed. R. Civ. P. 56. The Supreme Court has established guidelines to assist trial courts in determining whether this standard has been met:

> The inquiry performed is the threshold inquiry of determining whether there is a need for trial -- whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

The Eighth Circuit Court of Appeals has cautioned that summary judgment should be invoked carefully so that no person will be improperly deprived of a trial of disputed factual issues. *Inland Oil & Transport Co. v. United States*, 600 F.2d 725 (8th Cir. 1979), *cert. denied*, 444 U.S. 991 (1979). The Eighth Circuit set out the burden of the parties in connection with a summary judgment motion in *Counts v. M.K. Ferguson Co.*, 862 F.2d 1338 (8th Cir. 1988):

> [T]he burden on the moving party for summary judgment is only to demonstrate, *i.e.*, '[to] point out to the District Court,' that the record does not disclose a genuine dispute on a material fact. It is enough for the movant to bring up the fact that the record does not contain such an issue and to identify that part of the record which bears out his assertion. Once this is done, his burden is discharged, and, if the record in fact bears out the claim that no genuine dispute exists on any material fact, it is then the respondent's burden to set forth affirmative evidence, specific facts, showing that there is a genuine dispute on that issue. If the respondent fails to carry that burden, summary judgment should be granted.

*Id.* at 1339. (quoting *City of Mt. Pleasant v. Associated Elec. Coop.*, 838 F.2d 268, 273-274 (8th Cir. 1988) (citations omitted)(brackets in original)). Only disputes over facts that may affect the outcome of the suit under governing law will properly preclude the entry of summary judgment.

*Anderson*, 477 U.S. at 248.

Discussion

Plaintiffs' parallel claims under Title VII and Section 1981 are analyzed under the same legal framework. *Richmond v. Bd. of Regents of Univ. of Minn.*, 957 F.2d 595, 598 (8th Cir. 1992). Plaintiffs' claims under the Arkansas Civil Rights Act are also governed by the same standard. *McCullough v. Univ. of Ark. for Med. Scis.*, 559 F.3d 855, 860 (8th Cir. 2009). There are two ways by which a plaintiff may survive an employer's motion for summary judgment on a Title VII discrimination claim. First, the employee may produce direct evidence of discrimination. Second, "[i]f the employee lacks direct evidence of discrimination, he can survive summary judgment by showing a genuine dispute for trial under the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-05 (1973)." *McCullough v. Univ. of Ark. For Med. Scis.*, 559 F.3d 855, 860 (8th Cir. 2009).

Plaintiffs purport to have presented both direct evidence of discrimination and an inference of unlawful discrimination based on race and age. Direct evidence of discrimination is "evidence showing a specific link between the alleged discriminatory animus and the challenged decision, sufficient to support a finding by a reasonable fact finder that an illegitimate criterion actually motivated the adverse employment action." *McCullough*, 559 F.3d at 860 (quoting *Russell v. City of Kansas City*, 414 F.3d 868, 866 (8th Cir. 2007). Direct evidence is distinguished from "stray remarks in the workplace, statements by nondecisionmakers, or statements by decisionmakers unrelated to the decisional process." *Clearwater v. Indep. Sch. Dist. No. 166,* 231 F.3d 1122, 1126 (8th Cir.2000). Mrs. Gibson claims that Patsy Graham, her supervisor, told her that Charles Singleton directed that Mrs. Gibson not be cross trained. Even if reliable, the Court

13

finds that the alleged statement attributed to Charles Singleton does not constitute direct evidence of discrimination.  The alleged remark does not provide a direct link between Mrs. Gibson's race or age and her alleged lack of cross training.  Mr. Gibson claims that the fact that during the time period of September 2007 through May 2008, eight other employees  were disciplined for failing to meet the 90% efficiency standard, only one of these employees was Caucasion, and all those terminated under the progressive discipline policy were African-American, represents direct evidence of race discrimination.  This evidence does not provide a specific link between Mr. Gibson's  race and his discharge sufficient to support a finding by a reasonable fact finder that race actually motivated the adverse employment action

Because Plaintiffs present no direct evidence of discrimination, the Court will apply the analytical framework set forth in *McDonnell Douglas*.  Under this framework, the plaintiff has the initial burden of establishing a prima facie case of discrimination. *McGinnis v. Union Pacific R.R. Co.*, 496 F.3d 868, 873 (8th Cir. 2007).  The plaintiff's successful establishment of a *prima facie* case creates a presumption of unlawful discrimination and shifts the burden to the defendant, who must then articulate a legitimate, nondiscriminatory reason for its actions. *Id.* Finally, if the defendant proffers such a reason, the plaintiff must then show that the defendant's proffered reason is merely a pretext for discrimination. *Id.*

<u>Race Discrimination</u>

To establish a prima facie case of race discrimination, a Title VII plaintiff must show: (1) that she is a member of a protected class, (2) that she was meeting the employer's legitimate job expectations, (3) that she suffered an adverse employment action, and (4) that similarly situated employees outside the protected class were treated differently. *Clark v. Runyon*, 218 F.3d 915,

14

918 (8th Cir.2000).

    1.    <u>Lena Gibson</u>

 The Court finds that Lena Gibson has failed to present a prima facie case of race discrimination.  Plaintiff does not dispute that AGC satisfactorily resolved all of her grievances through the AGC Solutions Mediation Program in 2006.  Mrs. Gibson now complains that she has not been afforded cross training and if she had received this training, she would have "theoretically competed for every position" available at AGC.  However, Mrs. Gibson fails to offer any evidence to suggest that she was in fact denied cross training.  Mrs. Gibson's reliance on the alleged statement of Patsy Graham, that Mr. Singleton directed that Mrs. Gibson was not to receive cross training, is unreliable.  Plaintiff cannot rely on inadmissible hearsay to avoid summary judgment.  *Cherry v. Ritenour School Dist.*, 361 F.3d 474 (8th Cir. 2004).

    AGC states that cross training of employees consists of an employee applying for and accepting a "back up" position.  The evidence demonstrates that the only back up position that Mrs. Gibson applied for and did not receive was a Back Up Line Control Clerk position in the receiving and stores department in August 2007.  Mrs. Gibson did not receive this position because she was awarded another cross training position, the Back Up Line Dispatcher, for which she had also applied.

    Additionally, Mrs. Gibson failed  to produce evidence that similarly situated employees outside the protected class were treated differently.  Mrs. Gibson claims that "younger white girls," Jennifer, Geneva and Carolyn, received better treatment than she did.  However, Mrs. Gibson fails to produce evidence demonstrating that these individuals, or any others,  were similarly situated and  were treated more favorably.  The test to determine whether employees are

'similarly situated' to warrant a comparison to a plaintiff is a 'rigorous' one." *EEOC v. Kohler Co.,* 335 F.3d 766, 775 (8th Cir.2003) (quoting *Harvey v. Anheuser-Busch, Inc.,* 38 F.3d 968, 972 (8th Cir.1994)). "Specifically, the individuals used for comparison must have dealt with the same supervisor, have been subject to the same standards, and engaged in the same conduct without any mitigating or distinguishing circumstances." *Id.* at 776.  Plaintiff offers no evidence to demonstrate that these individuals were comparable or similarly situated in all relevant aspects.  Mrs. Gibson's unsupported and conclusory allegations cannot defeat summary judgment.  Fed. R. Civ. P. 56(e)(2).

Plaintiff alleges that in 2007 she was denied a position as a Power Truck Operator for Holiday Order Filling.  AGC claims that Mrs. Gibson was not eligible for this position because she had three written warnings on her disciplinary record.  The job was awarded to Kelvin Street, African-American, age 33.  Mrs. Gibson argues that the written warnings on her record are merely a pretext.  However, Mrs. Gibson's unsupported allegations cannot serve as the basis for denying summary judgment.  *Id.*   The Court finds that AGC has articulated a legitimate business reason for denying Mrs. Gibson this position.  Plaintiff offers no evidence to demonstrate pretext.

2.   <u>James Gibson</u>

The Court finds that Mr. Gibson has failed to present a prima facie case of race discrimination.  Mr. Gibson failed to present sufficient probative evidence to demonstrate that he was meeting AGC's legitimate job expectations or that similarly situated employees outside the protected class were treated more favorably.

Mr. Gibson claims that he was treated differently by Charles Singleton because of his race.  However, he offers no evidence to support this contention other than his subjective belief.

16

Mr. Gibson's self serving allegations and speculation are insufficient to create an issue of fact. *See, Davenport v. Riverview Gardens Sch. Dist.*, 30 F.3d 940, 945 (8th Cir.1994) (affirming summary judgment on race discrimination claim where "plaintiff presented no such evidence other than his own unsubstantiated allegations in deposition"); *accord Smith v. Int'l Paper Co.*, 523 F.3d 845, 848 (8th Cir.2008) (holding, in discrimination case, that " '[a] plaintiff may not merely point to unsupported self-serving allegations'" to defeat summary judgment).

Mr. Gibson outlines numerous complaints of unfair treatment including that he was ordered to drive trains which were not properly loaded; he was falsely accused of unsafe driving; the progressive discipline policy was applied unfairly; he was never rotated effecting his efficiency standard, and Mr. Singleton would hide behind corners and step out in front of him while he was driving. However, Mr. Gibson offers no evidence to support these allegations other than his unsupported testimony. Further, Mr. Gibson offers no proof that even if these events occurred, they were the result of race or age bias. Mr. Gibson's unsupported and conclusory allegations cannot defeat summary judgment. Fed. R. Civ. P. 56(e)(2).

Mr. Gibson specifically refers to the testimony of Don Robertson and Frank Richardson regarding his termination to support his claim of race discrimination. Both Robertson and Richardson agree that Mr. Gibson was discharged under the progressive discipline policy. However, AGC contends that a separate ground for termination also existed under the job abandonment policy. The testimony of Robertson and Richardson regarding the facts and circumstances surrounding Mr. Gibson's termination do not support a finding or inference that race or age was considered in the termination decision. Mr. Gibson also states that he was the only AGC employee ever separated while participating in a pending Solutions claim. However,

Mr. Gibson fails to provide evidence that any similarly situated person with a Solutions claim, one with five written warnings for various infractions in violation of AGC's progressive discipline policy, was treated more favorably.

AGC argues that it terminated Mr. Gibson because he received five written warnings between November 21, 2006 and February, 2008.  Plaintiff complains that some of the warnings should have rolled off his record as they were more than a year old, some of the allegations were false or he submitted a doctors excuse.  Plaintiff misconstrues the progressive discipline policy which provides that "when an employee has received no disciplinary action . . .  for one year of actual work, prior violations will not be used against him."  It is undisputed that each of the five written warnings accumulated by Mr. Gibson were received within one year of the previous infraction.  Plaintiff offers no evidence beyond his unsupported allegations to support his contentions. Based upon the repeated warnings for various infractions and Plaintiff's lack of objective evidence to support his contention that the warnings were in some way invalid, the Court finds that Plaintiff has failed to demonstrate that he was meeting the legitimate expectations of his employer.

Mr. Gibson claims that he was replaced by a young, white male when he was removed from his power truck position in September, 2007, however, he offers no proof to support this contention.  The undisputed facts demonstrate that Mr. Gibson was replaced by a 63 year old African-American employee when he was removed from his power truck position and he was replaced by a 58 year old African-American male following his termination.  Even if Mr. Gibson were replaced by the alleged younger white male, Plaintiff offers no evidence to demonstrate he was similarly situated in all relevant respects.    Additionally, AGC has presented a legitimate

18

business reason for Mr. Gibson's discharge and Plaintiff has failed to present evidence to support a finding of pretext.

Age Discrimination

The ADEA prohibits employers from discriminating against individuals on the basis of age with regard to their "compensation, terms, conditions, or privileges of employment." *Jankovitz v. Des Moines Indep. Cmty. Sch. Dist.*, 421 F.3d 649, 653 (8th Cir.2005) (quoting 29 U.S.C. §§ 623(a)(1), 630( 1 )). To establish a prima facie case of age discrimination, a plaintiff must show that he (1) was at least forty years old, (2) suffered an adverse employment action, (3) was meeting his employer's legitimate expectations at the time of the adverse employment action, and (4) was replaced by someone substantially younger. *Morgan v. A. G. Edwards & Sons, Inc.*, 486 F.3d 1034 (8th Cir. 2007).

1.   Lena Gibson

Mrs. Gibson's age discrimination claim fails for the same reasons her race discrimination claims fail. Mrs. Gibson has offered no proof beyond speculation and conjecture to support her allegation that she suffered an adverse employment action. Mrs. Gibson generally asserts that she was denied cross training however, she fails to offer proof beyond her unsupported allegations to establish her contention. Mrs. Gibson argues that Tony Turner, a younger white male received cross training which qualified him for a promotion over her. However, Plaintiff offers no evidence to demonstrate that Mr. Turner was similarly situated. Plaintiff's additional allegations that "most of the people who got the better jobs . . . were younger than Mrs. Gibson and had less seniority" fails to meet the rigorous standard required to establish that similarly situated persons of a different age received more favorable treatment.

With regard to the 2007 position as a Power Truck Operator for Holiday Order Filling which was awarded to Kelvin Street, African-American, age 33  Mrs. Gibson's unsupported allegations that the warnings on her disciplinary record were merely a pretext for AGC's discriminatory animus, cannot serve as the basis for denying summary judgment.  *Id.*  Again, Plaintiff offers no evidence that the warnings were false or that similarly situated persons were treated more favorably.  The Court finds that AGC articulated a legitimate business reason for denying Mrs. Gibson this position.  Plaintiff offers no evidence to support pretext.

    2.    <u>James Gibson</u>

Mr. Gibson presents no additional support for his age discrimination claim other than his unsupported contention that he was replaced on his power truck operator position by a younger white male. As previously explained, Mr. Gibson fails to support this allegation with proof. Additionally, Mr. Gibson fails to demonstrate that he was meeting the legitimate business expectations of his employer.

<u>Retaliation</u>

A plaintiff may establish a *prima facie* case of retaliation by showing that (1) the plaintiff engaged in protected activity, (2) an adverse employment action was taken against him, and (3) a causal connection exists between the two events. *Gilooly v. Missouri Dept. of Health and Senior Services*, 421 F.3d 734, 739 (8th Cir. 2005).

    1.    <u>Lena Gibson</u>

Mrs. Gibson claims that following her participation in the AGC Solutions Mediation Program, Mr. Singleton told Patsy Graham that Mrs. Gibson should not be cross trained.  As previously set forth,   Plaintiff cannot rely on inadmissible hearsay to avoid summary judgment.

Plaintiff has offered no evidence which demonstrates that she suffered an adverse employment action as a result of her participation in the Solutions program.  In fact, Plaintiff does not dispute that she has not received any disciplinary actions since the resolution of her claim.  Plaintiff failed to support her allegations with probative evidence which would permit a finding in her favor.

     2.    <u>James Gibson</u>

Here, the record is replete with evidence of Mr. Gibson's performance problems. The Court finds that no reasonable factfinder could infer a causal connection between his Solutions claim or EEOC charge and his termination.  Additionally,  Defendant offered legitimate, non-retaliatory reasons for the adverse employment action.  As set forth above, Plaintiff has failed to show that Defendant's proffered reasons are merely a pretext for discrimination.  Accordingly, Mr. Gibson's  retaliation claim also fails as a matter of law.

<u>Conclusion</u>

For the reasons set forth above, Defendant's motion for summary judgment is granted.

IT IS SO ORDERED this 1st day of February, 2011.


                              James M. Moody
                              United States District Judge